UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X
VAN CLEEF & ARPELS                    :
LOGISTICS, S.A., VAN CLEEF &          :
ARPELS, INC., and VAN CLEEF &         :
ARPELS DISTRIBUTION INC.,             :
                                      :
                                      :   **OPINION AND ORDER**
                                      :
            Plaintiffs,               :   07 Civ. 564 (SAS)
                                      :
      - against -                     :
                                      :
LANDAU JEWELRY and JOHN               :
DOES 1-10,                            :
                                      :
            Defendants.               :
------------------------------------------------------ X
------------------------------------------------------ X
VAN CLEEF & ARPELS                    :
LOGISTICS, S.A., VAN CLEEF &          :
ARPELS, INC., and VAN CLEEF &         :
ARPELS DISTRIBUTION INC.,             :
                                      :
            Plaintiffs,               :
                                      :
      - against -                     :
                                      :
ZIRCONMANIA, INC., JACOB              :
HASSIDIM, and JOHN DOES 1-10,         :
                                      :
            Defendants.               :
------------------------------------------------------ X


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/24/08

```
----------------------------------------------------- X
VAN CLEEF & ARPELS                    :
LOGISTICS, S.A., VAN CLEEF &          :
ARPELS, INC., and VAN CLEEF &         :
ARPELS DISTRIBUTION INC.,             :
                                      :
            Plaintiffs,               :
                                      :
         - against -                  :
                                      :
JJ GOLD INTERNATIONAL, INC.           :
d/b/a LAUREN G. ADAMS, THE            :
YELLOW DOOR, R&R REPLICAS,            :
and JOHN DOES 1-20,                   :
                                      :
            Defendants.               :
----------------------------------------------------- X
```

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Van Cleef & Arpels Logistics, S.A., Van Cleef & Arpels, Inc., and Van Cleef & Arpels Distribution Inc. bring this action alleging infringement of their copyright and trade dress rights in the jewelry design known as "Vintage Alhambra" (the "Design"), as well as unfair competition. Following the close of discovery, the parties cross-moved for partial summary judgment on certain elements of their copyright and trade dress claims.[1] This Opinion addresses only

---

[1]     The parties have styled their instant motions as partial summary judgment motions on, for example, the "issue" of plaintiffs' ownership of a valid copyright. Defendants "are entitled to summary judgment if they can show that at least one requisite element of [plaintiffs' copyright] claim cannot be proven." *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276, 282 (S.D.N.Y. 2001). Rather

the parties' motions with respect to the copyright claim. For the reasons set forth below, I hold that plaintiffs own a valid copyright in the Design.

## II. BACKGROUND

### A. Facts[2]

#### 1. The Van Cleef & Arpels Plaintiffs

Plaintiffs are corporations engaged in the business of designing,

---

than summary judgment, however, what the parties seek here is more properly understood to be the Court's decision as a matter of law only on whether a certain element of plaintiffs' claim has been met. Although I do not typically entertain motions on discrete elements of a claim, I have made an exception here because of the potential benefit to narrowing the issues for trial.

[2]     The following facts are taken from Defendants' Local Rule 56.1 Statement of Facts Not in Dispute ("Def. 56.1") and Plaintiffs' Revised Reply to Defendants' Statement of Undisputed Facts, and Statement of Material Facts Pursuant to Local Rule 56.1 ("Pl. 56.1").

The Court notes that defendants' Rule 56.1 statement consists of ten purportedly undisputed facts without citations to supporting evidence. Plaintiffs have submitted responses to those facts, as well as ten other purportedly undisputed facts in support of their cross-motion, to which defendants have failed to reply. In light of the inadequacy of these statements and the parties' questionable compliance with Rule 56.1, the Court exercises its "broad discretion to determine whether to overlook a party's failure to comply with local court rules" and "opt[s] to conduct an assiduous review of the record," to the extent it has been provided in support of the motions. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001).

For facts that provide background, cannot reasonably be in dispute, and are not material to these motions, the Court draws from plaintiffs' complaint in the action bearing civil docket number 07 Civ. 564, and the parties' submissions in support of their motions.

creating, and selling high-end jewelry, timepieces, and related goods.[3] Prior to

2000, the companies comprising "Van Cleef & Arpels" included France-based

Van Cleef & Arpels, S.A., which served as the flagship company, and the Société

de Lapidaires et Professionnels de la Recherche Artistique ("SLERPA"), a

separate wholly-owned subsidiary that functioned as the "design house" for the

products sold in the stores and boutiques.[4] Jacques and Pierre Arpels served as the

heads of Van Cleef & Arpels, S.A.[5] During this period, another Arpels brother

headed a separate company incorporated and operating in New York called Van

Cleef & Arpels, Inc., which manufactured some of its own jewelry but also

imported some from Van Cleef & Arpels, S.A.[6]

In 1999, the Richemont Group acquired the Van Cleef & Arpels

companies. SLERPA was merged into Van Cleef & Arpels, S.A. and the assets of

both were taken over by an entity called Van Cleef & Arpels Holding France. All

of the intellectual property assets owned by SLERPA or Van Cleef & Arpels, S.A.

---

[3]     *See* Complaint ("Compl.") ¶ 12.

[4]     Plaintiffs' Revised Memorandum of Law in Opposition to
Defendants' Motion for Summary Judgment and in Support of Cross-Motion for
Partial Summary Judgment ("Pl. Opp.") at 3. *Accord* Declaration of Frederic
Gilbert-Zinck, plaintiffs' witness, attached to Pl. Opp., ¶ 5.

[5]     *See* Pl. Opp. at 3.

[6]     *See id.*

were later transferred to plaintiff Van Cleef & Arpels Logistics, S.A., a company incorporated and operating in Switzerland.[7]

Plaintiffs Van Cleef & Arpels, Inc. and Van Cleef & Arpels Distribution, Inc. are among the corporate affiliates of Van Cleef & Arpels Logistics, S.A.[8] Following the acquisition in 1999, all entities are now part of the Richemont Group. Van Cleef & Arpels, Inc. is a licensed importer of the brand's products and the "exclusive licensee for the sale of such products at retail in the United States."[9] Van Cleef & Arpels Distribution, Inc., the New York corporation, is also a licensed importer and the exclusive licensee for the domestic sale of the brand's products at wholesale.[10]

### 2. The Vintage Alhambra Design

Plaintiffs claim copyright ownership over the Vintage Alhambra jewelry design consisting of the quatrefoil shaped charm or pendant, an outer metal border, fine beading on the border, larger corner beads or studs at each corner of the quatrefoil, in-laid material such as semi-precious stone, and the

---

[7]    *See id.* at 4.  *See also* Compl.¶ 1.

[8]    *See* Pl. Opp. at 4.  Van Cleef & Arpels, Logistics, S.A. recently changed its name to Van Cleef & Arpels, S.A. (Switzerland).  *See id.*

[9]    Compl. ¶ 2.

[10]    *Id.* ¶ 3.

5

spacing of the quatrefoil charms along the chain for necklaces and bracelets.[11]

Van Cleef & Arpels, Inc. applied for copyright registration of this jewelry design

as an artistic work, and its application was received by the Copyright Office on

January 7, 1976.[12]  According to its application, the date of the work's first

publication was October 31, 1968, in the United States.[13]

By submission to the Copyright Office dated December 13, 2006,

Van Cleef & Arpels, Inc., via counsel, notified the Copyright Office that it was

correcting its copyright registration to reflect information that had been recently

discovered.  Specifically, the date and location of first publication was corrected

from October 1968 to November 1970 and from the United States to France.[14]  In a

subsequent submission dated November 13, 2007, Van Cleef & Arpels, Inc. made

further corrections to its copyright registration, noting that the original date of

publication, October 31, 1968, was in fact correct.  It also noted that it was not the

---

[11]     *See* Pl. Opp. at 14.

[12]     *See* 1/7/76 Application for Registration of a Claim to Copyright, Ex.
1 to Compl.

[13]     *See id.*

[14]     *See* 12/13/06 Statement Regarding Copyright Registration, Ex. C to
Revised Declaration of Tal S. Benschar, plaintiffs' counsel ("Benschar Decl.").

author of the work, as listed in the original copyright application, but that the author was SLERPA.[15]

### 3.      88th Infantry Division of the U.S. Army

The 88th Infantry Division of the U.S. Army (the "88th Division") uses a quatrefoil or clover shape as its official insignia.[16]  This shape is usually blue in color and is most frequently found on the 88th Division's paraphernalia such as shoulder patches worn on the sleeves of its members' uniforms.[17]  The clover insignia has also appeared on Army-approved sweetheart jewelry and lapel pins.[18]  According to the Department of the Army, the insignia has been in continuous use since 1917.[19]

### B.      Procedural History

Plaintiffs filed three separate actions in this Court, each alleging copyright infringement, trade dress infringement under the Lanham Act and

---

[15]     *See* 11/13/07 Second Statement Regarding Copyright Registration, Ex. C to Benschar Decl.

[16]     *See* Def. 56.1 ¶1.

[17]     *See, e.g.*, Trademark License Agreement between Department of the Army and Zirconmania, Inc., Ex. C to Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Def. Reply"), ¶ A5.

[18]     *See id.*

[19]     *See id.*

common law, as well as unfair competition. Two of these actions were consolidated into the lead case bearing civil docket number 07 Civ. 564 and closed by an Order of Consolidation dated April 13, 2007. Following the close of discovery, the parties cross-moved for partial summary judgment on plaintiffs' federal copyright and trade dress claims.

## III.  APPLICABLE LAW

### A.  Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[20] An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[21] A fact is material when it "'might affect the outcome of the suit under the governing law.'"[22] "It is the movant's burden to show that no genuine factual dispute exists."[23]

---

[20]     Fed. R. Civ. P. 56(c).

[21]     *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[22]     *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (citing *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)).

[23]     *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, it must do more than show that there is "'some metaphysical doubt as to the material facts,'"[24] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[25] However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[26]

"Where the burden of proof at trial would fall on the non-moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non-movant's claim."[27] "In that event, the non-moving party must come forward with admissible evidence

---

[24] *Higazy*, 505 F.3d at 169 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[25] *Jeffreys*, 426 F.3d at 554 (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).

[26] *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).

[27] *Rodriguez v. City of New York*, No. 06 Civ. 9438, 2008 WL 525737, at *2 (S.D.N.Y. Feb. 27, 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 273 (2d Cir. 2001)).

sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."[28]

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.[29] However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[30] Summary judgment is therefore inappropriate "'if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party.'"[31]

## B. Copyright

"Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived,

---

[28]     *Id.*

[29]     *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 456 (2d Cir. 2007) (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).

[30]     *McClellan*, 439 F.3d at 144 (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)). *Accord Anderson*, 477 U.S. at 249.

[31]     *American Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315 (2d Cir. 2006) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002)).

reproduced, or otherwise communicated . . . ."[32]  To prevail on a claim of

copyright infringement under the Copyright Act of 1976,[33] a plaintiff must

establish "(1) ownership of a valid copyright, and (2) copying [by the defendant]

of constituent elements of the work that are original."[34]

The validity of a copyright depends upon its originality.[35]  The

Supreme Court has made clear that originality in this context "does not signify

novelty" and indeed, "a work may be original even though it closely resembles

other works so long as the similarity is fortuitous, not the result of copying."[36]

Rather, originality, as used in this context, "means only that the work was

independently created by the author (as opposed to copied from other works), and

that it possesses at least some minimal degree of creativity."[37]  This level of

creativity is "extremely low," with "the vast majority of works mak[ing] the grade

---

[32]      17 U.S.C. § 102(a).

[33]      *Id.* § 101 *et seq.*

[34]      *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

[35]      *See Yurman Design, Inc. v. PAJ, Inc. ("PAJ, Inc.")*, 262 F.3d 101,
109 (2d Cir. 2001) (citing *Feist*, 499 U.S. at 345-47; U.S. Const. art. I, § 8, cl. 8).

[36]      *Feist*, 499 U.S. at 345.

[37]      *Id.* (citation omitted).

11

quite easily" as long as they possess "some creative spark, no mater how crude, humble or obvious."[38]

In addition, "[c]opyright law may protect a combination of elements that are unoriginal in themselves."[39] This Court has previously observed that "in cases involving design, [] it is difficult to discern when a combination of unoriginal component parts is itself original so as to merit copyright protection."[40] In particular, jewelry designs, as derivative works "based upon one or more preexisting works," have presented courts with this difficulty.[41]

Where a plaintiff holds a certificate of copyright registration made before or within five years of the first publication of a work, the certificate constitutes prima facie evidence of the first element – *i.e.*, "the validity of the copyright and of the facts stated in the certificate."[42] Thus, the certificate of registration raises a rebuttable presumption that the work in question is

---

[38]     *Id.* (quotation marks omitted).

[39]     *PAJ, Inc.*, 262 F.3d at 109.

[40]     *Diamond Direct, LLC v. Star Diamond Group, Inc.*, 116 F. Supp. 2d 525, 529 (S.D.N.Y. 2000).

[41]     17 U.S.C. § 101. *See, e.g.*, *Diamond Direct*, 116 F. Supp. 2d at 529 (noting that "courts have struggled over the question of originality of jewelry designs").

[42]     17 U.S.C. § 410(c).

copyrightable,[43] as well as original.[44] Although a copyright registration issued more than five years after the first publication of a work is not entitled to the statutory presumption of validity, a court may accord it such evidentiary weight as it sees fit.[45]

A plaintiff's "proffer of its certificate of copyright registration thus shifts to [the defendant] the burden of proving the invalidity of the copyright [] and there the burden rests, unless the presumptions are rebutted."[46] The presumption of validity may be rebutted by "other evidence in the record [that] casts doubt on the question."[47] This includes evidence that the work at issue has been copied from the public domain, or that the work is a non-copyrightable utilitarian article.[48]

---

[43]     *See M. Lady, LLC v. AJI, Inc.*, No. 06 Civ. 0194, 2007 WL 2728711, at *3 (S.D.N.Y. Sept. 19, 2007) (citing *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997)).

[44]     *See Yurman Design, Inc. v. Golden Treasure Imps., Inc. ("Golden Treasure")*, 275 F. Supp. 2d 506, 514 (S.D.N.Y. 2003) (citing *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001)).

[45]     *See* 17 U.S.C. § 410(c).

[46]     *Fonar*, 105 F.3d at 104 (citation omitted).

[47]     *Id.* (citation omitted).

[48]     *See id.* (citations omitted).

## IV. DISCUSSION

The parties have asked the Court to decide as a matter of law whether plaintiffs own a valid copyright in the Design. In support of its motion, defendants primarily advance two arguments: *first*, that plaintiffs cannot claim copyright protection over an unoriginal, "trivial variant" of the 88th's Division clover insignia, which is a part of the public domain,[49] and *second*, that plaintiffs' certificate of copyright registration does not constitute prima facie evidence of their ownership of a valid copyright and should not be accorded any weight because it is false and inaccurate.[50] Additionally, defendants claim that even if plaintiffs had a valid copyright, it "was dedicated to the public through its failure to place notice on copies from 1968 [through] 1989."[51]

Plaintiffs contend that they own a valid copyright where the Design meets the low threshold of creativity required by the Copyright Act and where it consists of an "original combination of several elements" even though the individual elements, standing alone, may be unoriginal or part of the public

---

[49]     Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Def. Mem.") at 8, 10-12.

[50]     *See id.* at 9-10.

[51]     *Id.* at 13.

14

domain.[52] Plaintiffs further argue that copyright ownership is determined by the law of the country with the most significant relationship to the work at issue as well as the parties – according to plaintiffs, France – and applying French law, plaintiff Van Cleef & Arpels, Inc. owns the copyright in the Design.[53]

As an initial matter, plaintiffs do not rely on their certificate of copyright registration, received by the Copyright Office in 1976, as prima facie evidence of their ownership of a valid copyright.[54] Instead, plaintiffs contend that because the Design was originally created in France, by a French company – SLERPA, and by French nationals, French copyright law applies to the question of ownership.[55] Applying French law, plaintiffs assert that the Design is subject to copyright protection and plaintiffs own that copyright.[56]

---

[52] Pl. Opp. at 14.

[53] *See id.* at 15-19.

[54] Indeed, plaintiffs concede that because the certificate of copyright registration was issued more than five years after the Design's first publication, they are not entitled to a statutory presumption of validity. *See id.* at 15 n.7.

[55] *See id.* at 15.

[56] *See id.* (citing *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82 (2d Cir. 1998) ("Since the works at issue were created by Russian nationals and first published in Russia, Russian law is the appropriate source of law to determine issues of ownership of rights.").

Defendants counter by arguing that because plaintiffs sold their works without notice from 1968 through 1989, and because there is no restoration of copyright protection over such works when they are first published in the U.S., plaintiffs are now attempting to belatedly revise the location of first publication from the U.S. to France.[57] According to defendants, this attempt to revise plaintiffs' copyright registration should be disregarded as a late effort to "save" their copyright.[58]

Other than speculative assertions, defendants offer no evidence to contradict what the Court finds to be the credible testimony of plaintiffs' witness. Micheline Roussier, a former SLERPA employee, testified that she participated in the creation of the Design on behalf of SLERPA in 1968,[59] and that she believes the pieces bearing the Design were first sold in France prior to their availability for sale in the United States.[60] Defendants have not presented even a scintilla of

---

[57]     *See* Def. Reply at 7-8.

[58]     *Id.* at 8.

[59]     *See* 12/12/07 Deposition of Micheline Roussier ("Roussier Dep."), Ex. M to Benschar Decl., at 25:10-13.

[60]     *See* Roussier Dep., Ex. F to Declaration of Kalpana Nagampalli ("Nagampalli Decl. II"), defendants' counsel, attached to Def. Reply, at 146:11-22 (Defendants' counsel: "Tell me every reason you personally know that the Alhambra was sold in France first before the United States?" Roussier: "Because as soon as the first three models were manufactured, they were presented to Mr.

evidence or indeed any reason why this testimony should not be credited. Moreover, the Second Circuit has previously rejected the argument that a copyright registration is invalidated or that a finding of ownership is precluded because the registration was corrected after it was originally issued.[61]

In support of their claim that the Design is subject to copyright protection under French law and that plaintiffs own that copyright, plaintiffs have submitted the report of Professor Nicholas Binctin, who specializes in intellectual property law at the University of Poitiers in France. Through his report, Professor Binctin testifies that the Design is protected by France's copyright law, and that, initially, SLERPA, and now, plaintiffs own the copyright.[62] Because plaintiffs have submitted substantial evidence to support their claim of ownership and because defendants have failed to raise an issue of material fact supported by any

---

Pierre Arpel who had them put in inventory straight away." Defendants' counsel: "Is it possible that pieces were sold in the United States first that were Alhambra pieces?" Roussier: "I don't believe so, but I don't have absolute certainty.").

[61]     *See Hamil Am., Inc. v. GFI*, 193 F.2d 92, 98-99 (2d Cir. 1999) (holding that revisions to copyright registration to correct identity of the work's author did not invalidate the registration, and even if the plaintiff's "recordation was initially inadequate, [the] alleged shortcoming [does] not justify dismissal of its copyright action").

[62]     *See* Declaration and Expert Report of Professor Nicholas Binctin, attached to Pl. Opp.

evidence in the record, summary judgment is granted to plaintiffs on the issue of ownership.

I turn next to defendants' argument regarding the preclusive effect of the 88th Division's clover insignia on plaintiffs' copyright claim. *First*, the Design and the 88th Division's clover are distinguishable. The 88th Division's clover insignia is a simple quatrefoil shape of equal height and width, most often appearing as a cloth patch worn on the sleeve of a uniform.[63] While defendants have submitted evidence that the 88th Division clover insignia may also take the form of "sweetheart jewelry" such as pins and pendants, those pieces are also distinguishable from the Design and do not possess the same combination of elements.[64] Most notably, those pieces lack the beaded metal frame, the corner prongs, and the dimensions of the clover shape itself are different from that of the Design.

*Second*, despite the incorporation of elements that defendants contend are in the public domain – such as the quatrefoil shape and a metal frame – the "originality" in the Design "inheres in the way" plaintiffs have "recast and

---

[63]    *See, e.g.*, Photograph of Solider in Uniform, Ex. B to Nagampalli Decl. II, at 4.

[64]    *See, e.g.*, Photograph of 88th Division Sweetheart Pendant and Pin, Ex. 8 to Declaration of Kalpana Nagampalli ("Nagampalli Decl. I"), attached to Def. Mem., at 1.

arranged those constituent elements."[65]  Indeed, the "plaintiffs do not dispute that their copyrighted jewelry designs are composed of common elements in the designs; rather the [] copyrights are for the design combinations that result from combining those common elements."[66]

   *Third*, there is nothing in the record to support defendants' contention that the copyright is not valid because the Design was copied from the public domain.  Defendants have provided photographs of, inter alia, the 88th Division's clover insignia in varied incarnations, edifices utilizing the clover shape in their architectural design, and possibly infringing jewelry pieces from other companies.  However, the clover shapes pictured in defendants' photographs are readily distinguishable from the Design, and they do not feature the combination of elements over which plaintiffs claim copyright protection.  Moreover, the fact that distinguishable clover shapes exist does not constitute evidence that plaintiffs' Design was copied from the public domain.  In the absence of any evidence linking the creation of plaintiffs' Design to the public domain, defendants' argument is untenable.[67]

---

  [65] *PAJ, Inc.*, 262 F.3d at 110.

  [66] *Golden Treasure*, 275 F. Supp. 2d at 515.

  [67] *See Boisson*, 273 F.3d at 270 (finding that defendants failed to show plaintiff copied her alphabet quilt design from the public domain where

Because defendants have not offered evidence to raise a disputed issue as to a material fact and because the undisputed evidence supports plaintiffs' version of the facts, I hold that plaintiffs own a valid copyright in the Design as a matter of law. As a result, I hold that the first element of plaintiffs' copyright claim is satisfied.

## V.    CONCLUSION

For the reasons set forth above, I hold that plaintiffs own a valid copyright in their Design, as a matter of law. The Clerk of the Court is directed to close the motions [Document Nos. 18, 23, 43]. Because plaintiffs have represented to the Court that they have settled their claims against defendant The Yellow Door, the Clerk of the Court is directed to alter the caption (07 Civ. 1445) accordingly. Additionally, for the reasons set forth at a telephone conference held on April 16, 2008, plaintiffs are granted leave to re-file their motion for the

---

defendants' only evidence was plaintiff's deposition testimony that she had seen alphabet designs in other quilts).

Court's decision as a matter of law on certain elements of their Lanham Act trade
dress claim.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           April 18, 2008

## - Appearances -

**For Plaintiffs**:

Milton Springut, Esq.
Tal S. Benschar, Esq.
Kalow & Springut LLP
488 Madison Avenue
New York, NY 10022
(212) 813-1600
Fax: (212) 813-9600

**For Defendants**:

Kenneth S. Feldman, Esq.
Kalpana Nagampalli, Esq.
Feldman Law Group, P.C.
12 East 41st Street
New York, NY 10017
(212) 532-8585
Fax: (212) 532-8598