UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

VAN CLEEF & ARPELS LOGISTICS, S.A., VAN
CLEEF & ARPELS, INC., and VAN CLEEF &
ARPELS DISTRIBUTION, INC.,

      Plaintiffs,

  - against -

LANDAU JEWELRY and JOHN DOES 1-10,

      Defendants.

------------------------------------------------------------X

VAN CLEEF & ARPELS LOGISTICS, S.A., VAN
CLEEF & ARPELS, INC., and VAN CLEEF &
ARPELS DISTRIBUTION, INC.,

      Plaintiffs,

  - against -

ZIRCONMANIA, INC, JACOB HASSIDIM, and
JOHN DOES 1-10,

      Defendants.

------------------------------------------------------------X



MEMORANDUM
OPINION
AND ORDER

07 Civ. 564 (SAS)

1

VAN CLEEF & ARPELS LOGISTICS, S.A., VAN
CLEEF & ARPELS, INC., and VAN CLEEF &
ARPELS DISTRIBUTION, INC.,

Plaintiffs,

- against -

JJ GOLD INTERNATIONAL, INC. d/b/a LAUREN
G. ADAMS, R&R REPLICAS, and JOHN DOES 1-
10,

Defendants.

------------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION AND BACKGROUND

On April 18, 2008, this Court issued an Opinion and Order granting plaintiffs' motion for partial summary judgment concerning the validity of their copyright in the "Vintage Alhambra" design ("the Design") and denying defendants' cross-motion on the same issue.[1] Defendants now seek reconsideration of both motions. I previously held that the plaintiffs (collectively "Van Cleef") hold a valid United States copyright over the Design, based on the

---

[1] *See Van Cleef & Arpels Logistics, S.A. v. Landau Jewelry*, 547 F. Supp. 2d 356 (S.D.N.Y. 2008).

long-held French copyright.[2] Defendants now assert that the parallel U.S. copyright in the work was abandoned based on a failure to abide by country-specific formalities and has not been restored. For the reasons described below, defendants' motion for reconsideration is granted, but the Court adheres to its original decision set forth in the April 18 Opinion and Order.

## II. LEGAL STANDARD

### A. Reconsideration Under Local Rule 6.3

A motion for reconsideration is governed by Local Rule 6.3 and is appropriate where "'the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"[3] "A motion for reconsideration may also be granted to 'correct a clear error or prevent manifest injustice.'"[4]

Local Rule 6.3 must be "narrowly construed and strictly applied so as

---

[2] *See id.* at 364.

[3] *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (quotation omitted).

[4] *In re Terrorist Attacks on September 11, 2001*, No. 03 MDL 1570, 2006 WL 708149, at *1 (S.D.N.Y. Mar. 20, 2006) (quoting *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)).

3

to avoid repetitive arguments on issues that have been considered fully by the Court."[5] Courts have repeatedly been forced to warn counsel that such motions should not be made reflexively, to reargue "'those issues already considered when a party does not like the way the original motion was resolved.'"[6] The purpose of Local Rule 6.3 is to "'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'"[7]

### B. Choice of Law in International Copyright

Under Second Circuit law, international copyrights are subject to a bifurcated choice of law analysis. When determining the initial owner of a copyright, a court must look to the law of the country in which the work

---

[5] *DGM Invs., Inc. v. New York Futures Exch., Inc.*, 288 F. Supp. 2d 519, 523 (S.D.N.Y. 2003) (quotation omitted). *Accord Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (holding that a court will deny the motion when the movant "seeks solely to relitigate an issue already decided.").

[6] *Joseph v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 96 Civ. 9015, 2006 WL 721862, at *2 (S.D.N.Y. Mar. 22, 2006) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)).

[7] *Naiman v. New York Univ. Hosps. Ctr.*, No. 95 Civ. 6469, 2005 WL 926904, at *1 (S.D.N.Y. Apr. 1, 2005) (quoting *Carolco Pictures, Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)).

originated.⁸ However, the scope of the rights that attend copyright ownership is determined by the country in which the copyright is to be enforced.⁹ This is also known as the "national treatment" principle.¹⁰ Ongoing copyright ownership and the attendant question of copyright abandonment are questions of scope rather than initial ownership, and they are therefore determined according to the law of the country of enforcement.¹¹

### B. Copyright Restoration

In 1994, Congress passed the Uruguay Round Agreements Act ("URAA"), under which "the United States agreed to restore copyright registrations for works of foreign origin [that] were in the public domain in the United States for failure to comply with the formalities required under the U.S.

---

⁸ *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90-91 (2d Cir. 1998).

⁹ *See id.* at 91.

¹⁰ *Id.* at 89.

¹¹ In its April 18 Opinion and Order, this Court overlooked this dichotomy and looked to the law of France to analyze both initial and continuing ownership. *See Van Cleef & Arpels*, 547 F. Supp. 2d at 363. As described below, the change in analysis does not alter this Court's decision concerning present ownership.

5

copyright laws."[12] Under the 1909 Copyright Act – which remained the core of U.S. copyright law until 1978[13] – works published in the United States were required to adhere to certain formalities, including affixation of a copyright notice.[14] Publication without the requisite notice constituted abandonment of the copyright into the public domain.[15]

In order for the URAA to have restored a U.S. copyright at the time the Act became effective, the work must have met four statutory requirements.

> The URAA restores copyrights . . . for original works that (1) are not in the public domain of their source countries through expiration of their copyright terms, (2) are in the public domain in the United States because of noncompliance with legal formalities, (3) have at least one author who was a national or domiciliary of an eligible country, and (4) were first published in an eligible country and were not published in the United States within thirty

---

[12] James E. Hawes & Bernard C. Dietz, *Copyright Registration Practice* § 29:5 (2d ed. 2007). *See also Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 156 (2d Cir. 2007) ("Congress enacted the URAA on December 8, 1994, to bring the United States into compliance with the Berne Convention's Rule of Retroactivity.").

[13] *See Sanga Music, Inc. v. EMI Blackwood Music, Inc.*, 55 F.3d 756, 758 n.2 (2d Cir. 1995).

[14] *See id.* at 759.

[15] *See National Comics Publ'ns, Inc. v. Fawcett Publ'ns, Inc.*, 191 F.2d 594, 598 (2d Cir. 1951). *Accord Sanga Music*, 55 F.3d at 759.

days of first publication.[16]

Eligible countries included member-states of the World Trade Organization.[17] If a work met all of these criteria on January 1, 1996, copyright was automatically restored on that date without further action.[18] A restored copyright "vests initially in the author . . . of the work as determined by the law of the source country."[19]

The URAA requires the holder of a restored copyright to file a notice of intent to enforce its rights with the U.S. Copyright Office or directly with an infringer in order to enforce its rights against a "reliance party."[20] A reliance party is one who was "legitimately exploiting works in reliance on their public domain status" prior to restoration.[21] If an infringer was not a reliance party at the time of restoration, a restored copyright may be enforced in the same manner as a copyright that never entered the public domain.[22] In either case, the presence of a

---

[16] *Troll Co.*, 483 F.3d at 156 (citing 17 U.S.C. § 104A(h)(6)).

[17] *See* 17 U.S.C. § 104A(h)(6)(D).

[18] *See id.* § 104A(h)(2)(A).

[19] *Id.* § 104A(b).

[20] *See id.* § 104A(d)(2). *See also id.* § 104A(e) (laying out procedures for filing a notice of intent).

[21] *Troll Co.*, 483 F.3d at 156.

[22] *See* 17 U.S.C. § 104A(d)(1).

7

reliance party does not impede restoration, it simply limits remedies available to the holder of a restored copyright.[23]

## III. DISCUSSION

Defendants advance a two-part argument. *First*, they argue that Van Cleef's U.S. copyright in the Design was abandoned as a result of its failure to abide by formalities required at the time it was created.[24] *Second*, defendants argue that Van Cleef's U.S. copyright is not restored because it has not filed a new registration specific to the URAA.[25] In order for Van Cleef not to hold a valid U.S. copyright in the design – despite its valid French copyright – both of these points must be true.

Even assuming arguendo that the initial copyright was abandoned due to a failure to abide by formalities required in 1968 – when Van Cleef first published the design – Van Cleef's U.S. copyright in the design would have been

---

[23] *See Dam Things from Denmark v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 557 (3d Cir. 2002) (noting that applying for restoration is "not required by statute," even when reliance parties exist).

[24] *See* Motion for Reconsideration and Reargument Under Local Rule 6.3 and FRCP 59 ("Def. Mem.") at 3.

[25] *See id.*

8

automatically restored by the URAA.[26] Van Cleef holds a valid copyright in France, the source country of the Design.[27] The only reason why the work would have fallen into the public domain would be a failure to abide by formalities.[28] The author of the Design was the Société de Lapidaires et Professionnels de la Recherche Artistique – a France-based subsidiary of Van Cleef & Arpels[29] – and France is a member-state of the World Trade Organization.[30] Finally, the Design was first published in France[31] and was manufactured and sold in the French market before its export to the United States.[32]

---

[26] Because this Court can resolve the instant motion without determining whether necessary formalities were affixed to the Design, it need not resolve the parties' dispute concerning the burden of proof on this issue. *See* Def. Mem. at 2 (claiming that Van Cleef bears the burden of proof); Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Reconsideration at 1-2 (claiming that defendants bear the burden of proof).

[27] *See Van Cleef & Arpels*, 547 F. Supp. 2d at 363.

[28] Defendants have offered no other reasons in the instant motion why the copyright would not be valid. Moreover, this Court already held that the Design contains sufficient originality to be copyrightable. *See id.* at 364.

[29] *See id.* at 358, 363.

[30] *See* World Trade Organization, *France and the WTO*, http://www.wto.org/english/thewto_e/countries_e/france_e.htm.

[31] *See Van Cleef & Arpels*, 547 F. Supp. 2d at 363.

[32] *See* 12/11/07 Deposition of Micheline Roussier, at 46-47, Ex. M to 12/28/07 Declaration of Tal S. Benschar, plaintiffs' attorney.

The fact that Van Cleef did not file a notice of intent concerning restoration does not alter the legal inevitability of restoration. Moreover, defendants have not argued that they are reliance parties. Therefore, even if the U.S. copyright in the Design at one point passed into the public domain, Van Cleef presently holds a valid U.S. copyright in the Design as well as the full panoply of remedies available to a copyright holder vis-à-vis the defendants.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for reconsideration is granted, but the Court adheres to its original decision set forth in the April 18 Opinion and Order. The Clerk of the Court is directed to close this motion (Docket No. 56). A conference is scheduled for October 30, 2008 at 3:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           October 2, 2008

## - Appearances -

**For Plaintiffs:**

Milton Springut, Esq.
Tal S. Benschar, Esq.
Kalow & Springut LLP
488 Madison Avenue
New York, New York 10022
(212) 813-1600

**For Defendants:**

Kenneth Feldman, Esq.
Stephen Edward Feldman, Esq.
Feldman Law Group
12 East 41st Street
New York, New York 10017
(212) 532-8585